# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12cv576 (ESH) |
| RELIABLE LIMOUSINE SERVICE, LLC *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Defendant Paul Benjamin Rodberg is the president and sole owner of Reliable Limousine and Bus Service, LLC ("RLBS"). On February 6, 2013, this Court entered an Order permanently enjoining Rodberg and another entity as to which he was president and sole owner, Reliable Limousine Service, LLC ("RLS"), "from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the Washington Metropolitan Area Transit Commission ("WMATC")." (Order, Feb. 6, 2013 [Dkt. No. 24] at 1.) Since that Order, it is undisputed that RLBS (as opposed to RLS) has transported passengers for hire between points within the Metropolitan District without authorization from WMATC. (Show Cause Hr'g Tr., Sept. 25, 2013 at 23.) On September 25, 2013, this Court ordered Rodberg to show cause "why this Court should not amend its February 6, 2013 Order to enjoin any entity created or controlled, directly or indirectly, by [him], including [RLBS], from transporting passengers for hire between points within the Metropolitan District unless and until that entity is properly authorized by the WMATC." (Order, Sept. 25, 2013 [Dkt. No. 37] at 2.) Having considered Rodberg and RLBS's response to the motion to show cause and for the foregoing

1

reasons, the Court will clarify its February 6, 2013 Order to make explicit that RLBS, as well as any other entity created or controlled, directly or indirectly, by Rodberg, is enjoined from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the WMATC.

## BACKGROUND

In its May 25, 2012 first amended complaint, WMATC alleged that Rodberg and RLS were advertising for and performing unauthorized passenger transportation services within WMATC jurisdiction, and sought, *inter alia*, a permanent injunction "restraining defendants Reliable Limousine Service, LLC, and Paul Rodberg from performing passenger transportation services between points in the Metropolitan District, *directly or indirectly*, unless and until authorized by WMATC." (First Amd. Compl., May 25, 2012 [Dkt. No. 6] at 10 (emphasis added).) On July 9, 2012, the Court denied defendants' motion to dismiss, and on December 19, 2012, it ordered defendants to provide answers to WMATC's interrogatories and otherwise respond to WMATC's document requests by January 2, 2013. After defendants failed to comply, WMATC moved for sanctions. (Pl.'s Mot. for Sanctions, Jan. 18, 2013 [Dkt. No. 19].)

Defendants did not comply, nor did they provide any reason or excuse for their failure to comply, with the Court's December 19, 2012 Order. The Court accordingly granted WMATC's motion and entered default judgment for WMATC on February 6, 2013. (Mem. Op., Feb. 6, 2013 [Dkt. No. 23] at 2; Order, Feb. 6, 2013 [Dkt. No. 24] at 1.) The default judgment, *inter alia*, permanently enjoined defendants "from transporting passengers for hire between points within the Metropolitan District unless and until properly authorized by the [WMATC]." (Order, Feb. 6, 2013 at 1.) The Court denied defendants' motion for reconsideration (Order, April 28,

2013 [Dkt. No. 28]), and defendants timely appealed.  (Notice of Appeal, May 3, 2013 [Dkt. No. 29].)

On August 30, 2013, WMATC filed a motion for an order to show cause as to why Rodberg should not be held in contempt of the Court's February 6, 2013 Order.  (Pl.'s Mot. for Entry of Order to Show Cause re Contempt, Aug. 30, 2013 [Dkt. No. 32].)  WMATC alleged, *inter alia*, that Rodberg was violating the Order by transporting passengers for hire between points within the Metropolitan District without WMATC authorization through his ownership and operation of RLBS.  (*Id.* at 1.)  In his response to the show cause order, Rodberg argued that he was not violating the injunction because, *inter alia*, only RLBS was transporting the passengers and RLBS was a legally distinct entity and thus not bound by the injunction. (Answer to Order to Show Cause, Sept. 20, 2013 [Dkt. No. 46] at 4-5.)  On September 23, 2013, the Court pointed the parties to *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945), which explained that "a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control.  In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." (Order, Sept. 23, 2013 [Dkt. No. 36] at 1.)  The Court instructed the parties to be prepared to present evidence at a show cause hearing as to whether RLBS was "in privity" with Rodberg or otherwise "aided and abetted" his circumvention of the February 6, 2013 Order.  (*Id.*)

At that hearing on September 25, 2013, counsel for Rodberg stipulated that RLBS was transporting passengers for hire between points within the Metropolitan District without authorization by the WMATC.[1]  (9/25/13 Hr'g Tr. at 23.)  Rodberg testified that as the sole

---

[1] RLBS had previously applied for a permit to become authorized to transport passengers for hire within the Metropolitan District.  However, WMATC denied the permit, in part because of Rodberg's

owner, officer, and director of RLBS, he had the authority to terminate RLBS's operations altogether. (*Id*. at 40.) Rodberg's counsel, however, again argued that because RLBS was not a named defendant in this action, it was not covered by the injunction. (*Id.* at 46-47.)[2]

To avoid any argument regarding the meaning of the Court's Order, the Court did not hold Rodberg in contempt based on RLBS's operations at that time,[3] but instead it ordered Rodberg to show cause as to why it "should not amend its February 6, 2013 Order to enjoin any entity created or controlled, directly or indirectly, by Mr. Rodberg, including [RLBS], from transporting passengers for hire between points within the Metropolitan District unless and until that entity is properly authorized by the WMATC." (Order of Contempt and to Show Cause, Sept. 25, 2013 [Dkt. No. 37] at 2.) Rodberg filed an answer to that order to show cause, and WMATC filed an opposition. (*See* Answer to Order to Show Cause ("Answer"), Oct. 4, 2013 [Dkt. No. 38]; Pl.'s Opp'n to Def.'s Answer, Oct. 11, 2013 [Dkt. No. 39].) A further show cause hearing was held on October 18, 2013.

## LEGAL STANDARD

"'The power of a court of equity to modify a decree of injunctive relief . . . is long-established, broad, and flexible.'" *United States v. W. Elec. Co.*, 46 F.3d 1198, 1202 (D.C. Cir.

---

history of violating WMATC regulations, including through the operation of RLS without proper authorization. *See In re Application of Reliable Limousine and Bus Serv. LLC, et al.*, Order No. 13,775 (WMATC Feb. 28, 2013). RLBS has appealed that determination, which is currently pending before the U.S. Court of Appeals for the Fourth Circuit. *See Reliable Limousine and Bus Serv. LLC et al. v. Wash. Metro. Area Transit Comm'n*, No. 13-1735 (4th Cir. filed June 6, 2013).

[2] This argument is contrary to an admission made by RLBS and Rodberg before WMATC in March 2013: "While the corporate defendant to that case is an entity distinct from the Applicants here, the injunction reaches Mr. Rodberg directly and personally and accordingly suggests that his continued operation of [RLBS] without licensure from the Commission, no matter what external licenses it may possess, is enjoined." (*See* Mot. for Reconsideration before WMATC, March 29, 2013 [Ex. 39-1] at 4.)

[3] The Court did, however, find Rodberg in contempt of its February 6, 2013 Order to disable the website http://www.reliablelimo.com. (Order of Contempt and to Show Cause, Sept. 25, 2013 [Dkt. No. 37] at 1.) Rodberg has since purged that finding of contempt.

1995) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 706 F.2d 956, 967 (2d Cir. 1983)); *see also United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."); *Thompson v. U.S. Dep't Of Hous. & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005) ("It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued."). "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961).

Thus, "[a]t the request of the party who sought the equitable relief, a court may tighten the decree in order to accomplish its intended result." *W. Elec. Co.*, 46 F.3d at 1202 (citing *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 252 (1968) ("[T]he District Court should modify the decree so as to achieve the required result with all appropriate expedition."); *see also 1250 24th St. Assocs. v. Brown*, 684 F. Supp. 326, 328 (D.D.C. 1988); 11A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2961 (2d ed.). The Court's essential inquiry, then, is whether modification or clarification is necessary to achieve the intended result of its February 6, 2013 Order. *See 1250 24th St. Assocs.*, 684 F. Supp. at 328.[4]

---

[4] Both parties assume that the standard for modification or clarification is either Fed. R. Civ. P. 59(e) or 60(b)(5). (*See* Answer at 4-5 & n.2; Opp'n at 2-3). Rule 59(e) does not apply to this case, because more than 28 days have passed since the entry of default judgment. *See* Fed. R. Civ. P. 59(e). And while modifications of injunctions at the request of the enjoined parties clearly "now come within Rule 60(b)(5)," *W. Elec. Co.*, 46 F.3d at 1202, there is conflicting authority in this Circuit as to whether Rule 60(b)(5) governs requests for modifications made by the party that obtained the injunction. *Compare W. Elec. Co.*, 46 F.3d at 1202 (suggesting that requests to modify an injunction to accomplish its intended result are considered under the equitable *United Shoe* standard) *with Pigford v. Veneman*, 292 F.3d 918, 925 (D.C. Cir. 2002) (applying Rule 60(b)(5) and *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) to a plaintiff's motion to modify a consent decree's filing deadlines). *See New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 168-70 (D.D.C. 2008) (noting the conflicting authorities and ultimately not resolving the "thorny issue"); *Cook v. Billington*, 2003 WL 24868169, *3 (D.D.C. Sept. 8, 2003) (same).

## ANALYSIS

**I.   THE COURT RETAINS JURISDICTION TO MODIFY OR CLARIFY THE ORDER WHILE IT IS ON APPEAL.**

As a preliminary matter, the Court must assure itself that it has jurisdiction to modify or clarify the February 6, 2013 Order. *See Cobell v. Norton*, 240 F.3d 1081, 1094 (D.C. Cir. 2001). Rodberg argues that this Court lacks jurisdiction because that Order is currently pending appeal. (Answer at 3-4.) Generally, "filing a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). However, it is settled that "after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court." *Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177 (1922).

Fed. R. Civ. P. 62(c) "codifies th[is] inherent power of a court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify, and specifically authorizes the district court to modify, if necessary, the terms of the injunction being appealed from." *Christian Sci. Reading Room Jointly Maintained v. City & Cnty. of San Francisco*, 784 F.2d 1010, 1017 (internal quotation marks omitted), *amd.*, 792 F.2d 124 (9th Cir. 1986); *see also* Fed. R. Civ. P. 62(c) ("While an appeal is pending from an interlocutory appeal or final

---

The Court concludes that Rule 60(b)(5) does not apply to this situation. In *Pigford*, the party benefitting from the consent decree sought *relief* from the portion of that consent decree that included filing deadlines and did so specifically under the auspices of Rule 60(b)(5). *See Pigford*, 292 F.3d at 925. Because Rule 60(b) by its terms defines when a court "may relieve a party" from a final judgment or order, and the *Pigford* plaintiffs specifically asked for relief under Rule 60(b)(5), the strictures of Rule 60 applied. However, in this case – as the defendants note (*see* Answer at 4 n.2) – WMATC does *not* seek *relief* from the Court's Order, but instead seeks modification or clarification of the Order to ensure that it achieves its intended results. Accordingly, the long-settled *United Shoe* standard – with its focus on the "required result" and its basis in the inherent power of a court to modify its own decree – applies. *See Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 288 n.16 (3d Cir. 2001) (explaining that "[t]he Supreme Court has set a more rigorous standard for defendants seeking modification because defendants usually seek modification 'not to achieve the purposes of the provisions of the decree, but to escape their impact.'" (quoting *United Shoe Mach. Corp.*, 391 U.S. at 249)).

judgment that grants . . . an injunction, the Court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."); *DL v. Dist. of Columbia*, 845 F. Supp. 2d 1, 31 (D.D.C. 2011), *vacated and remanded on other grounds*, 713 F.3d 120 (D.C. Cir. 2013). The district court's power to modify an injunction to preserve the status quo necessarily includes the lesser power to clarify the injunction to supervise compliance. *See Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir. 1994) ("As the district court issued the amended order to clarify its original injunction and to supervise compliance in the wake of Meinhold's motion for contempt, it did not lack jurisdiction."); *cf. United States v. Philip Morris USA Inc.*, 686 F.3d 839, 844 (D.C. Cir. 2012) (distinguishing "modifications" and "clarifications" of injunctions). Accordingly, the Court has jurisdiction to modify or clarify its February 6, 2013 Order on appeal to preserve the status quo or otherwise supervise compliance.

## II. CLARIFYING THE ORDER TO EXPLICITLY ENJOIN RLBS IS CONSISTENT WITH THE RULE 65(D).

An injunction binds not only the parties to that injunction, but also the parties' "officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation with" the aforementioned persons. Fed. R. Civ. P. 65(d)(2); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1136 (D.C. Cir. 2009). "The rule derives from the common law doctrine that an injunction 'not only binds the parties defendant but also those identified with them in interest, in privity with them, represented by them or subject to their control' – any person or entity through whom the defendants might carry out enjoined activity and so nullify the order." *Philip Morris USA Inc.*, 566 F.3d at 1136 (quoting *Regal Knitwear*, 324 U.S. at 14.).

Because a court's authority to modify or clarify an injunction while on appeal is limited to preserving the status quo or otherwise supervising compliance, its power to clarify to make explicit which non-parties are bound by the injunction is necessarily as broad as (though no

broader than) the non-party provisions in Fed. R. Civ. P. 65(d)(2)(B)-(C). *Cf. Philip Morris USA Inc.*, 566 F.3d at 1136 (concluding that a "remedial order cannot expand the scope of the injunction beyond that defined by Rule 65(d)"). That is, if an injunction already binds a non-party by operation of Rule 65(d)(2), a court may clarify the injunction to make explicit what is already implicitly so. Accordingly, the question before this Court is whether RLBS is covered by Rule 65(d)(2), such that the Court's February 6, 2013 Order is *already* binding upon it. If so, to ensure that the Order achieves its intended result, the Court will clarify it to make explicit that RLBS is bound.

RLBS argues that it is not bound by the Court's Order because Rodberg is merely its agent, and "Rule 65(d) by its terms does not allow an injunction against a named agent to bar an unnamed principal from actions.'" (Answer at 7 (quoting *RDK Corp. v. Larsen Bakery, Inc.*, 2006 WL 2168797, *12 (E.D. Wis. July 31, 2006)).) While this statement of law is correct, *see Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 304 n.5 (2d Cir. 1999), it does not help RLBS, since Rodberg is the sole owner and president of the company. (9/25/13 Hr'g Tr. at 34, 40.) In this capacity, Rodberg is not RLBS's agent.

Of course, RLBS, even though owned by Rodberg, is not automatically bound by an injunction as to Rodberg. *See J.J. McCaskill Co. v. United States*, 216 U.S. 504, 514 (1910) ("Undoubtedly a corporation is, in law, a person or entity entirely distinct from its stockholders and officers."). Instead, RLBS is bound only if in "privity" with, subject to control by, or otherwise in active concert or participation with, Rodberg. *See Philip Morris USA Inc.*, 566 F.3d at 1136; *see also* Fed. R. Civ. P. 65(d)(2). A corporation is "in privity" with its sole owner "to the extent it is 'so identified in interest with [the owner] that [it] represents precisely the same legal right in respect to the subject matter involved' in the injunction." *See Philip Morris USA*

8

*Inc.*, 566 F.3d at 1136 (quoting *Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963)) (defining the test for privity between parent and subsidiary corporations).

Based on the evidence presented at the show cause hearings, the Court concludes that Rodberg and RLBS are "in privity" under *Phillip Morris*. The Court enjoined Rodberg and another wholly-owned company (RLS) from operating for-hire passenger transportation services within the Metropolitan District without WMATC authorization. By that time, Rodberg had terminated all passenger transportation services carried out by RLS and had begun offering those services through RLBS.[5] (*See* 9/25/13 Hr'g Tr. at 34-35.) Rodberg exercises complete control over RLBS, including determining whether the company continues to operate. (*See id.* at 40.) And all the while, RLBS continues to offer for-hire passenger transportation services within the Metropolitan District without WMATC authorization. (*Id.* at 23.) In this way, RLBS is in privity with Rodberg because it is "substantially dominated, directed and controlled by" him, *Jefferson Sch. of Soc. Sci.*, 331 F.2d at 83, as to the specific conduct proscribed by the Order. *See Philip Morris USA Inc.*, 566 F.3d at 1136; *see also Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010) (finding plaintiff in privity with his company because he "had complete control . . . as the Companies' president and sole shareholder. . . ."); *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir. 1975) ("Here it is clear that Evans was in privity with Tarpon because he was the president and major stockholder of the corporation and he admitted by deposition that he made the 'ultimate decisions.'"). Accordingly, RLBS is bound by the

---

[5] The Court notes that there is no evidence that Rodberg specifically created RLBS to avoid the effect of this litigation; indeed, the RLBS's existence pre-dates this action by over four months, and the Court's Order by over a year. (9/25/13 Hr'g Tr. at 34, 37.) Thus, this case is unlike those cited by WMATC where a successor corporation is formed for the purposes of carrying out the enjoined activity. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 919-20 (7th Cir. 1996); *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 417 (7th Cir. 1995).

February 6, 2013 Order as a non-party "in privity" with Rodberg,[6] and the Court will hereby clarify its prior Order to explicitly enjoin RLBS.[7]

## III. CLARIFYING THE ORDER TO EXPLICITLY ENJOIN RLBS DOES NOT OFFEND DUE PROCESS.

Finally, RLBS argues that clarifying the February 6, 2013 Order to specifically enjoin it is tantamount to the post-judgment addition of a third-party to a suit, and thus would violate its due process rights by denying it its day in court. (Answer at 7-8.) However, RLBS has now had its day in court and has had the opportunity to argue why it should not be bound by this Court's Order as a non-party under Rule 65(d)(2). Due process does not guarantee a non-party like RLBS the opportunity to relitigate the merits of an underlying injunction; instead, it only guarantees a non-party the opportunity to litigate whether it is bound by the injunction. As the First Circuit has explained in an analogous case:

> Contempt proceedings operate to ensure that nonparties have had their day in court. In order to hold a nonparty in contempt, a court first must determine that she was in active concert or participation with the party specifically enjoined

---

[6] In the alternative, the Court would also find that RLBS is in "active concert or participation" with Rodberg, *see Pearl Investments, LLC v. Standard I/O, Inc.*, 297 F. Supp. 2d 335, 338 (D. Me. 2004) ("'Participation' may be a fairly low threshold under the current factual circumstances (*i.e.,* Chunn's ownership and direct control of Standard I/O may be sufficient)."), or otherwise is "aiding and abetting," Rodberg in engaging in conduct enjoined by the February 6, 2013 Order. *See Regal Knitwear Co.*, 324 U.S. at 14 ("In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."); *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990) ("The law does not permit the instigator of contemptuous conduct to absolve himself of contempt liability by leaving the physical performance of the forbidden conduct to others.").

[7] Rodberg also argues that enjoining RLBS is impermissible because, under Fed. R. Civ. P. 54(c), "default judgment must not differ in kind from . . . what is demanded in the pleadings." (Answer at 5-6.) This argument fails as a matter of law and fact. As a legal matter, a request for an injunction against a party also operates, through Rule 65(d)(2), as a request for an injunction against non-parties covered by the Rule. Moreover, in this case, WMATC requested a "permanent injunction . . . restraining defendants . . . from performing passenger transportation services between points in the Metropolitan District, *directly or indirectly*, unless and until authorized by WMATC." (First Amd. Compl. at 10 (emphasis added).) This request to enjoin defendants – including Rodberg – from directly *or indirectly* performing passenger transportation services within the Metropolitan District fully encompassed an injunction as to any entities directly or indirectly controlled by Rodberg.

> (typically, the named defendant). This means, of course, that the nonparty must be legally identified with that defendant, or, at least, deemed to have aided and abetted that defendant in the enjoined conduct. The existence of such a linkage makes it fair to bind the nonparty, even if she has not had a separate opportunity to contest the original injunction, because her close alliance with the enjoined defendant adequately assures that her interests were sufficiently represented.

*Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000) (citations omitted). Because RLBS had an ample opportunity to dispute whether it is "in privity" with Rodberg, it cannot complain that its due process rights have been violated. *See id.*; *In re Grand Jury Proceedings*, 795 F.2d 226, 234 (1st Cir. 1986) ("There is general agreement that due process requires that a potential contemnor be given notice and a hearing regardless of whether the contempt is civil or criminal in nature."); *cf. Marshak v. Treadwell*, 595 F.3d 478, 491-92 (3d Cir. 2009) (reversing finding of civil contempt where contemnor appeared only as a non-party witness and plaintiff never moved for a finding of contempt against contemnor).

Given the prior proceeding and the clarifications now in effect,[8] the Court will not, at this time, hold Rodberg or RLBS in contempt for violating the February 6, 2013 Order. Although the Order implicitly enjoined RLBS pursuant to Rule 65(d)(2), the Court believes it is advisable to allow RLBS and Rodberg to have until November 6, 2013, to comply with the clarified Order issued this day before advancing with contempt proceedings.

## CONCLUSION

For the foregoing reasons, the Court herby clarifies its February 6, 2013 Order to make explicit that RLBS, as well as any other entity created or controlled, directly or indirectly, by Mr. Rodberg, is enjoined from transporting passengers for hire between points within the

---

[8] The Court will also clarify the Order to make explicit that, like RLBS, other entities owned or controlled, directly or indirectly, by Rodberg, now and in the future, are also bound by the Order. *See Reich*, 50 F.3d at 417 ("A shuffle between two corporations, both wholly owned by [defendant], cannot avoid the injunction.").

Metropolitan District unless and until properly authorized by the WMATC. An Order reflecting this Memorandum Opinion will be issued on this Day.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: October 18, 2013